**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADAM JAMES BOELKES,<br><br>                                    Petitioner,<br><br>v.<br><br>CYNTHIA TOMPKINS, Warden,<br>                                    Respondent. | Case No.: 17cv1905-DMS (BGS)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

        Adam James Boelkes (hereinafter "Petitioner") is a state prisoner proceeding pro se and in forma pauperis with a Second Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  (ECF No. 12.)  He was convicted in the San Diego County Superior Court of one count of assault by means of force likely to produce great bodily injury and one count of battery with serious bodily injury, accompanied by findings he personally inflicted great bodily injury, and was sentenced to twelve years in prison.  (<u>Id.</u> at 1-2.)  He claims his federal constitutional rights were violated because the evidence is insufficient to support the jury findings that he used force likely to inflict great bodily injury and inflicted great bodily injury (claim one), he was sentenced twice for the same act (claim two), and the answer to a jury question asking for the definition of great bodily injury was incomplete, and defense counsel's acquiescence in the answer amounted to ineffective assistance of counsel (claim three).  (<u>Id.</u> at 7.)

Respondent has filed an Answer and lodged the state court record. (ECF Nos. 15, 16, 19.) Respondent argues federal habeas relief is not available as to claim one because the state court adjudication, on the basis that the great bodily injury findings are supported by sufficient evidence, is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. (ECF No. 15-1 at 13-20.) Respondent contends claim two presents an issue of state law only and is not cognizable on federal habeas. (Id. at 21.) Finally, Respondent argues the aspect of claim three alleging the trial judge provided an incomplete answer to the jury's question is procedurally defaulted because it was forfeited in state court due to defense counsel's acquiescence in the answer, and the state court adjudication of the ineffective assistance of counsel aspect of the claim, on the basis defense counsel may have had a tactical reason for not requesting a more complete definition of great bodily injury, is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. (Id. at 21-27.)

As set forth below, the Court finds that the instructional error aspect of claim three is procedurally defaulted and fails on the merits even if Petitioner could overcome the default. The Court finds the state court adjudication of all other claims is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court recommends the Second Amended Petition be denied.

## I.    PROCEDURAL BACKGROUND

In a two-count amended information filed in the San Diego County Superior Court on January 13, 2015, Petitioner was charged with assault by means likely to produce great bodily injury in violation of California Penal Code § 245(a)(4) (count one), and battery with serious bodily injury in violation of California Penal Code § 243(d) (count two). (Lodgment No. 2, Clerk's Transcript ["CT"] at 9-12.) Both counts were accompanied by allegations that Petitioner personally inflicted great bodily injury within the meaning of California Penal Code § 1192.7(c)(8), and count one further alleged he personally inflicted

great bodily injury within the meaning of California Penal Code § 12022.7(a). (Id.) The amended information alleged Petitioner had two prior felony convictions which constituted "prison priors" within the meaning of California Penal Code §§ 667.5(b) and 668, one of which also constituted a "serious" felony conviction within the meaning of California Penal Code §§ 667(a)(1), 668 and 1192.7(c), as well as a "strike" within the meaning of California Penal Code §§ 667(b)-(i), 668 and 1170.12. (Id.)

On January 21, 2015, a jury returned guilty verdicts on both counts and found the great bodily injury allegations true. (CT 112-13.) Petitioner admitted the truth of the prior conviction allegations. (CT 207.) On April 28, 2015, his motion to dismiss the strike prior was denied and he was sentenced to twelve years in prison. (CT 209-10.) The sentence consisted of two years on count one, doubled due to the strike prior, plus a consecutive term of three years on the count one great bodily injury enhancement under § 12022.7(a), and a consecutive five-year term on the prior serious felony, with the sentence on count two and its enhancement stayed. (Id.)

Petitioner appealed, raising the claims presented here. (Lodgment Nos. 3-5.) The appellate court affirmed. (Lodgment No. 9, People v. Boelkes, No. D067993, slip op. (Cal.App.Ct. July 5, 2016).) On March 27, 2017, Petitioner filed a petition for review in the state supreme court raising the same claims. (Lodgment No. 7.) The petition for review was summarily denied on September 14, 2016. (Lodgment No. 8.)

## II. **TRIAL PROCEEDINGS**

Michael Reilly testified that in 2013 he was on active service in the United States Marine Corps and stationed at Camp Pendleton near Oceanside, California. (Lodgment No. 1, Reporter's Tr. ["RT"] at 115-16.) Reilly went to the Haunted Head bar in Oceanside on September 30, 2013, to celebrate the birthday of a woman he was dating at the time, Cassandra, along with her friend Jessica and several of his friends. (RT 118, 121.) He arrived at the bar at 5:30 or 6:30 p.m., and about an hour or two later Petitioner entered. (RT 119.) Reilly was surprised to see Petitioner because he thought he had been banned from the bar, but "didn't pay any mind to it because he wasn't bothering me at that point."

(RT 120.) At some point Petitioner approached Reilly and asked to talk, but Reilly "just told him to please leave me alone." (RT 120.) He said the encounter was "nonchalant," that Petitioner went back to sitting at the bar, and they had no more contact inside the bar the rest of the night. (RT 126.) Reilly was concerned Petitioner might hit him as he had done on a prior occasion in the same bar. (RT 121.) About two months earlier, the first time Reilly met Petitioner, they were at the Haunted Head bar sitting across from each other at a booth with several other people when Petitioner knocked over a beer while trying to put his feet up on the table. (RT 121-22.) The beer spilled in Reilly's lap, and Reilly testified that:

> I said that was fucked up. I got up, said I am going to have a cigarette. I don't know if he misheard me or whatnot. [¶] I was walking past the pool table. I was probably about 5, 6 feet away from the door. I felt two or three blows to the back of my head. [¶] . . . [¶] All I saw was the bouncers rush past me and grab [Petitioner]. [¶] . . . [¶] They escorted him outside the bar. I turned around and saw that he was the closest one. No one else was around me. [¶] They told me he was the one who hit me and he wouldn't be allowed in the bar.

(RT 122.)

At last call on the night of September 30, 2013, which was about 1:30 a.m. on October 1, Reilly, who said he had five or six beers and one shot during the seven or eight hours he was at the bar that night, went outside to smoke a cigarette. (RT 137-38.) There were eight or ten people in front of the bar smoking and talking, and Jessica came out and they smoked and chatted. (Id.) Petitioner approached Reilly with his hand out to shake hands, and said he came to apologize again and that there were no hard feelings. (RT 139.) Reilly told him to leave him alone and walk away, and Petitioner turned to walk away. (RT 140-41.) Reilly glanced down as he took a drag from his cigarette and was in the process of looking up when he was struck by Petitioner's right fist in his left eye. (RT 141-43.) The first blow was enough to knock Reilly off his feet and fall backwards, and a second fist to his mouth knocked him to the ground. (RT 143-44.) Reilly hit the back of his head on cement and was in and out of complete consciousness while he was taken inside the bar

and cleaned up in the bathroom, and the next thing he remembered was being put in a car. (RT 145-49.) The only thing he remembered in the car was Cassandra looking though his pockets for his identification at the Camp Pendleton gate and being told they were taking him to the base hospital. (RT 150.) He said he was "pretty hazy from probably -- until some point in the drive that I kind of came to and they were telling me, we are taking you to the Naval hospital." (Id.) He needed help walking into the hospital, and said: "That's where I remember basically everything started coming back. Basically I didn't blackout after that anymore. I remember from that point on." (RT 151.)

His left eye was swollen shut and had a cut above it which required five stitches. (Id.) During the first three weeks the eye was painful and caused him headaches; it was swollen shut for about two months, and he only started regaining vision after about a month and a half. (RT 151-53.) The doctors were unable to remove a contact lens from his left eye, and after two months he developed a cyst from the contact lens which was painful and caused him to lose sleep for about two weeks, for a total of two and one-half months of recovery. (RT 153-55.) His lip was cut by his teeth, and although it did not require stitches, about two or three weeks later a lump developed and he had to go to the hospital to have his lip cut with a razor and drained of blood and pus to prevent an infection. (RT 159.) He had to keep gauze in his mouth for about two weeks after that and it was painful to eat, drink and talk. (RT 160.) Photographs taken at the hospital of his injuries were shown to the jury. (RT 156-57.)

Jessica Loyal testified that in October of 2013, Michael Reilly dated her former roommate Carissa, whom Reilly incorrectly recalled was named Cassandra. (RT 200-01.) Jessica said that she and Carissa went to the Haunted Head bar about 8:30 p.m. on September 30, 2013 to celebrate Carissa's birthday, where they ran into Reilly and his Marine buddies. (RT 202-03.) At some point that night Petitioner, whom she had never met, approached Jessica and Reilly inside the bar. (RT 206-07.) Jessica said she and Reilly both asked Petitioner to leave them alone. (RT 207.) Jessica said she and Carissa had been told by Reilly and his friend Chad that Petitioner and Reilly had an altercation in the past.

(Id.)  Petitioner asked Jessica if she was Reilly's bodyguard, and she "told him I was not." (RT 207-08.)  Petitioner walked away and Jessica was not aware of him in the bar for the rest of the night.  (RT 209.)

Around last call, about 1:30 or 2:00 a.m., Jessica went outside to smoke a cigarette, at which point she was sober, having had about three beers all evening.  (RT 209-10.)  She was outside alone when Reilly came out and lit a cigarette and they began chatting.  (RT 211.)  Petitioner approached Reilly from behind and punched him in the side of the head, causing Reilly to fall, and Petitioner climbed on top of Reilly and started punching him in the face.  (RT 215.)  Jessica tried to push Petitioner off Reilly but a woman named Rachel grabbed her from behind.  (RT 215, 217.)  Jessica said Petitioner and Reilly did not exchange any words, that Petitioner blindsided Reilly, and that Reilly did not have time to throw a punch.  (RT 216-17.)  Jessica and Chad helped Reilly off the ground and took him inside the bar to find Carissa, who was their driver, so she could drive them to the hospital.  (RT 221.)  Reilly was "kind of out of it" as they were putting him in the car, although he had showed no signs of severe intoxication prior to being hit.  (RT 222.)

Jeffrey Killion, a City of Oceanside Police Officer, contacted Michael Reilly at the Naval Hospital on Camp Pendleton on October 1, 2013.  (RT 251.)  Reilly "was in a bad condition," with his left eye bloody and swollen shut, swollen upper and lower lips, blood in his mouth, and was in pain and had a hard time talking.  (RT 252.)  Reilly reported that as he was turning away from Petitioner he was blindsided, punched by Petitioner, and that Petitioner had attacked him at the same bar on a previous occasion.  (RT 261.)  The incident was reported to police about 2:19 a.m. on October 1, and Officer Killion interviewed Reilly at 2:45 a.m.  (RT 254-55.)  Officer Killion did not note in his report that Reilly was intoxicated, which he would have done had he noticed signs of intoxication.  (RT 260.)

Mark Lavake, a City of Oceanside Police Detective, interviewed Reilly on October 8, 2013.  (RT 277.)  Reilly "looked beat up, like he had been in a fight," with a swollen left eye, swollen lips, and stitches around his left eye, and reported trouble seeing out of his left eye and that he could not do his job.  (RT 279.)  He had no difficulty recalling the

events of October 1, and said he had gone outside the bar to smoke a cigarette about closing time when Petitioner tried to shake his hand and Reilly asked him to stay away. (RT 280-81.) As Reilly turned away, Petitioner punched him in the left eye, and punched him again as he was falling. (RT 281.) Reilly identified Petitioner's photograph in a photographic lineup. (RT 283.) The People rested. (RT 289.)

The defense called Alexus Ferreira who testified that Petitioner is a friend and former roommate whom she has known for about eight years, since she was 16 or 17 years old. (RT 294, 302-03.) Ferreira was with Petitioner at the Haunted Head bar on October 1, 2013, along with Rachel, Petitioner's girlfriend at the time. (RT 294-95.) At some point Petitioner approached Michael Reilly and tried to apologize "for something that happened before." (RT 295.) Ferreira said Reilly "seemed very annoyed and aggravated and in a bad mood. He didn't – he didn't want to talk to [Petitioner] or hear anything he had to say." (RT 296.) Petitioner walked away from Reilly, and Ferreira did not know if Reilly had accepted Petitioner's apology, but she said Reilly "seemed very aggravated with [Petitioner]." (Id.) There was no further interaction between them in the bar. (RT 297.) Ferreira went outside with Petitioner and Rachael at the end of the night, where:

> [Petitioner] saw Michael again. [Petitioner] proceeded to apologize to him for the second time. [¶] And Michael was still aggravated, and he kind of went towards [Petitioner] and threatened – I think he said, like, you better back up or something, something along those lines. [¶] And he kind of got in Petitioner's face. [Petitioner] was trying to talk to him and apologize to him again. [¶] And then Michael swung at [Petitioner] first, and then they started fighting. It happened super fast.

(RT 298.)

Ferreira said only one or two punches were thrown, that Reilly and Petitioner fell to the ground and continued fighting on the ground for a couple of seconds, and no punches were thrown while they were on the ground. (RT 299.) She also said Petitioner jumped on Reilly while he was on the ground and punched him again, and that they exchanged punches while on the ground. (RT 319-22.) Reilly's girlfriend jumped on Petitioner and was pulled off by Rachel, at which time the fight broke up. (RT 299-300, 313.)

The defense rested and there was no rebuttal evidence. (RT 326-27.) After deliberating about two hours, the jury sent a note asking:

> Can we get clarification on the findings? Specifically: 1. Why are the findings "did produce GBI" when the assault charge states "likely to produce GBI"? 2. Better clarification on what GBI means – what constitutes greater vs moderate harm. 3. Clarification between the two findings – what are the differences between 12022.7(a) and 1192.7(c)(8).

(CT 110, 203-04.)

The trial judge drafted a response, which was approved by the prosecutor and defense counsel, with defense counsel stating: "I think I am fine with the response. I think it answers the question. I think it's fine." (RT 453.) The trial judge's response stated:

> 1. Assault With Force Likely to Produce Great Bodily Injury in violation of Penal Code section 245(a)(4) as charged in Count One requires that the District Attorney's Office prove that force used was likely to cause great bodily injury, but the charge doesn't required that force was actually applied to the person or that any injury was actually inflicted.
>
> The allegations attached to Count One alleging the infliction of Great Bodily Injury in violation of Penal Code section 12022.7(a) and Penal Code section 1192.7(c)(8) require the District Attorney's Office prove that the defendant actually personally inflicted Great Bodily Injury on the person within the meaning of "Great Bodily Injury" as defined by the instructions 3160 for those allegations.[1]
>
> The District Attorney's Office has the burden of proving Count One and the allegations attached to Count One beyond a reasonable doubt. The Jury must evaluate Count One and the allegations separately and return a verdict for each individually.
>
> 2. As to your request for clarification on what constitutes Great Bodily Injury and greater versus moderate harm, the Court refers you to Instruction 200 (Duties of Judge and Jury), which states, "Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these

---

[1] Instruction 3160 as given stated: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (RT 361.)

17cv1905-DMS (BGS)

instructions. Please be sure to listen carefully and follow the definitions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings."

The court cannot further define these phrases or words for you. As always you must consider Instruction 200 in its entirety and consider all the instructions together.

3. As to your request to clarify what the differences are between the two Great Bodily Injury allegations per Penal Code section 12022.7(a) and Penal Code section 1192.7(c)(8), there are no substantive differences in what the District Attorney's Office must prove for each allegation. Although the allegations have the same elements that must be proved, they must each be evaluated separately and you must return a separate finding for each, and the District Attorney's Office must prove all of the elements beyond a reasonable doubt as to both.

(CT 111.)

Thirty minutes later the jury returned guilty verdicts on both counts and true findings on all three enhancement allegations. (CT 204-05.) They found Petitioner guilty of assault by means of force likely to produce great bodily injury in violation of Penal Code § 245(a)(4) as charged in count one, and returned true findings that he personally inflicted great bodily injury within the meaning of Penal Code §§ 12022.7(a) and 1192.7(c)(8) as to that count. (RT 455-56.) The jury found him guilty of battery with serious bodily injury in violation of Penal Code § 243(d) as charged in count two, and returned a true finding that he personally inflicted great bodily injury within the meaning of Penal Code § 1192.7(c)(8) as to that count. (RT 456.) Petitioner admitted he had a 2007 conviction for assault with great bodily injury and a 2001 conviction for residential burglary, which the trial judge found constituted prison priors because he had not remained law abiding for five years after being released from custody on those convictions, and that the burglary conviction constituted a serious prior felony as well as a strike prior. (RT 462-63; CT 121-22.)

Petitioner's motion to dismiss the strike in the interests of justice was denied after the trial judge found he fell within the spirit of the three strikes law because he had violated

probation multiple times after serving his sentence on the 2001 burglary conviction, and because the 2007 conviction for assault by means of force likely to produce great bodily injury arose from another unprovoked punch to the face of a victim who suffered a broken cheekbone, a broken nose, a knocked-out tooth and four or five chipped teeth. (RT 479-81; CT 209-10.) He was sentenced to twelve years in prison, consisting of the low term of two years on count one, chosen because it was a short attack with two punches, no weapons and no permanent injury, doubled to four years due to the prior strike, plus a consecutive term of three years on the great bodily injury enhancement under § 12022.7(a), with no time on the § 1192.7(c)(8) enhancement, for a total of seven years on count one. (RT 481-82.) The sentence on count two consisted of the low term of four years, stayed because it was based on the same act as count one, with no time on the § 1192.7(c)(8) enhancement. (RT 482.) A consecutive five-year term was added for the prior serious felony conviction. (Id.) The burglary prison prior was struck because it was the same as the serious felony, and the assault prison prior was struck in the interests of justice. (Id.)

## III.   PETITIONER'S CLAIMS

(1)   The findings by the jury that Petitioner used force likely to inflict great bodily injury and inflicted great bodily injury are without substantial and credible supporting evidence because the two quick punches he threw were not likely to result in great bodily injury, and he did not inflict great bodily injury because the victim merely suffered a black eye and swollen lips with no medical evidence of a serious injury. (ECF No. 12 at 5.)

(2)   Petitioner's sentence was enhanced twice based on the same act, five years due to his prior strike conviction and three years for the Penal Code § 12022.7(a) great bodily injury finding, because the trial court premised both enhancements on the fact that the jury in this case found he had inflicted great bodily injury. (Id. at 5-6.)

(3)   Petitioner was prejudiced by the trial court's failure to provide an adequate response to the jury's request for clarification of the meaning of "great bodily injury," and he received ineffective assistance of counsel due to defense counsel's acquiescence in the answer and failure to request a detailed definition of great bodily injury. (Id. at 7.)

## IV. **DISCUSSION**

For the following reasons, the Court recommends denying habeas relief because the state court adjudication of Petitioner's claims, other than the trial court error aspect of claim three, is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. The Court recommends denying the trial court error aspect of claim three because it is procedurally defaulted and fails on the merits even if Petitioner could overcome the default.

### A. **Standard of Review**

In order to obtain federal habeas relief with respect to a claim adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) is a threshold requirement, and even if it is satisfied, or does not apply, a petitioner must still show a federal constitutional violation occurred in order to obtain relief. Fry v. Pliler, 551 U.S. 112, 119-22 (2007).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In order to satisfy § 2254(d)(2), a petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## B.     Claim One

Petitioner alleges the jury's finding on count one that he used force likely to cause great bodily injury when he assaulted the victim, and their findings on the count one enhancements that he inflicted great bodily injury on the victim, are without substantial and credible supporting evidence because the two quick punches he threw were not the type of force likely to result in great bodily injury, and because there is no basis to find the victim suffered great bodily injury as he merely had a black eye and swollen lip with no medical evidence of a serious injury.  (ECF No. 1 at 5.)

Respondent answers that the state court adjudication of this claim, on the basis that sufficient evidence was presented to allow the jury to draw a reasonable inference that the force used by Petitioner was the type likely to inflict great bodily injury and he inflicted great bodily injury, is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. (ECF No. 15-1 at 13-20.)

Claim one was presented to the state supreme court in a petition for review. (Lodgment No. 7.)  That petition was denied with an order which stated: "The petition for review is denied. [¶] Corrigan, J., was absent and did not participate."  (Lodgment No. 8, People v. Boelkes, No. S236548, order (Sep. 14, 2016).)  It was presented to the state appellate court on direct appeal and denied in a written opinion.  (Lodgment Nos. 3-5, 9.)

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991). The Court will look through the silent denial by the state supreme court to the last reasoned state court opinion addressing claim one, the appellate court opinion, which states:

> Boelkes claims that there is insufficient evidence in the record to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) (count 1) and the jury's true findings on the great bodily injury allegations (§ 12022.7, subd. (a)) (§ 1192.7, subd. (c)(8)) attached to counts 1 and 2.

*1. Governing law*

 *a.  The relevant statutes*

 i. *Section 245, subdivision (a)(4)*

Section 245, subdivision (a)(4) provides in relevant part:

> "Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished . . . ."

"Great bodily injury is significant or substantial injury. (Citation.) Permanent or protracted impairment, disfigurement, or loss of function, however, is not required."  (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1087 (*Beasley*).)  "The use of hands or fists alone may be sufficient to support a conviction of assault by means of force likely to produce great bodily injury." (*In re Nirran W*. (1989) 207 Cal.App.3d 1157, 1161 (*Nirran W*.).)  In *Nirran W*., the court concluded that there was sufficient evidence that a thirteen-year-old who "stood five feet two inches tall and weighed one hundred and five pounds" (*id*. at p. 1160) committed an assault by means of force likely to produce great bodily injury in light of the following evidence:

> "The record shows (defendant's) assault was without warning and delivered with great force.  The blow to the side of (the victim's) face was sufficient to knock her down just as she and the driver of the van were about to shake hands.  The injuries she sustained caused her to be treated at a hospital for four to five hours.  She testified that she felt her jaw pop out and then back in.  At the time of the jurisdictional hearing almost two months later, her teeth still did not meet.  Despite his slight stature, (defendant) clearly delivered the blow with sufficient force likely to produce great bodily injury." (*Id*. at p. 1162.)

 ii. *Section 12202.7*

Section 12022.7, subdivision (a) provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

"Great bodily injury is defined in section 12022.7, subdivision (f), as 'significant or substantial physical injury.' However, 'the injury need not be so grave as to cause the victim "permanent," "prolonged," or "protracted" bodily damage.' (Citation.) 'Proof that a victim's bodily injury is "great" . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.'" (*People v. Woods* (2015) 241 Cal.App.4th 461, 486.)

### iii. *Section 1192.7, subdivision (c)(8)*

Section 1192.7, subdivision (c) provides in relevant part:

"As used in this section, 'serious felony' means any of the following:

. . . (8) any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, or any felony in which the defendant personally uses a firearm."

### b. *The law governing challenges to the sufficiency of the evidence*

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "(T)he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

A challenge to the sufficiency of the evidence supporting a jury's true finding on a great bodily injury enhancement (§ 12022.7) is governed by the same substantial evidence standard of review. (*People v. Escobar* (1992) 3 Cal.4th 740, 750); (see, e.g., *People v. Saez* (2015) 237 Cal.App.4th 1177, 1189.)

### 2. *Application*

The record clearly contains sufficient evidence to support the jury's guilty verdict on the charge of assault by means of force likely to produce

great bodily injury. Boelkes approached Reilly, and then, without warning, punched Reilly in the eye. Reilly explained that the force of the blow "was strong enough to knock me from my feet and start kind of tilting backwards." The punch caused Reilly to become "dazed," knocked him off balance, and caused a cut above his eye that required sutures to close.

Boelkes then punched Reilly a second time in the mouth, causing him to lose his balance, fall straight back, and hit the back of his head on the cement. The punch also caused a significant laceration to Reilly's mouth. Reilly stated that, after he hit the ground, he "went in and out," and that he was "conscious somewhat," explaining that he "kind of heard people." Evidence that Boelkes punched Reilly in the face twice, hard enough to cause him to lose consciousness and to cause injuries to his mouth and eye that required medical attention, constitutes evidence from which a reasonable jury could find that Boelkes committed an assault by means of force likely to produce "significant or substantial injury." (*Beasley, supra*, 105 Cal.App.4th at p. 1087; see *Nirran W.*, *supra*, 207 Cal.App.3d at pp. 1161-1162.) [Footnote: "Although not raised as a separate argument, Boelkes offers an alternative interpretation of the phrase "great bodily injury," contending that it requires an injury of """graver and more serious character than ordinary battery" . . .' which itself requires '"physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent."""' Boelkes suggests that we must apply such a definition because "ambiguous statutes prohibiting 'great bodily injury' must be interpreted with sufficient specificity to avoid rending them unconstitutionally vague." We are not persuaded. "The term 'great bodily injury' has been used in the law of California for over a century without further definition . . . ." (*People v. La Fargue* (1983) 147 Cal.App.3d 878, 886-887.) Moreover, California courts have rejected the claim that the term "great bodily injury" is unconstitutionally vague and overbroad as used in sections 245 and 12022.7. (See *People v. Guest* (1986) 181 Cal.App.3d 809, 812.)]

The record also clearly contains sufficient evidence to support the jury's findings that Boelkes personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a). [Footnote: The People offered photographs of the victim's injuries in evidence, but Boelkes has not requested that the exhibits containing the photographs be transmitted to this court. (See Cal. Rules of Court, rule 8.320(e).) We remind counsel of appellant's responsibility to transmit all exhibits necessary to review appellant's claims on appeal. (See, e.g., *People v. Whalen* (2013) 56 Cal.4th 1, 85 ("it is appellant's burden to present a record adequate for review and to affirmatively demonstrate error").)] As discussed above, Reilly testified that

he lost consciousness for a short period of time after falling to the ground from the punches. Shortly after the attack, his friends took him to the hospital. The cut above his left eye took five stitches to close. Reilly's left eye was swollen shut, and he could not see out of the eye at all for approximately a month and a half. Reilly went to the hospital every two weeks after the incident for treatment on his eye. The eye injury caused Reilly "stinging pain" for approximately two and a half to three weeks. In addition, approximately two months after the incident, Reilly developed a cyst on his eyeball that was a result of him being unable to remove a contact lens from the eye after the injury. The cyst caused Reilly to be unable to see properly for approximately another two weeks.

Reilly also suffered an injury to his mouth when the force of Boelkes's punch caused Reilly's tooth to lacerate his lip. Approximately two weeks after the incident, medical personnel had to make an incision into the lip to drain pus that had accumulated from the injury. Reilly also had to keep gauze in his mouth for approximately two weeks after the injury, which made it difficult to talk. In addition, Reilly stated that it was "painful to eat," for approximately two weeks. Given the nature of Reilly's injuries, the resulting pain, and the medical care required to treat the injuries, there was plainly sufficient evidence to support the jury's findings on the great bodily injury enhancement allegations.

Accordingly, we conclude that there is substantial evidence in the record to support the jury's guilty verdict on the charge of assault by means of force likely to produce great bodily injury and the jury's true findings on the great bodily injury allegations.

(Lodgment No. 9, People v. Boelkes, No. D067993, slip op. at 5-10.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Petitioner is entitled to federal habeas corpus relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The standards of 28 U.S.C. § 2254(d) require an additional layer of deference in applying the Jackson standard, and this Court "must ask whether the decision of the California Court of Appeal reflected

17cv1905-DMS (BGS)

an 'unreasonable application of' <u>Jackson</u> and <u>Winship</u> to the facts of this case." <u>Juan H. v.</u> <u>Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005), quoting 28 U.S.C. § 2254(d)(1). Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," not as a means of error correction. <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011), quoting <u>Jackson</u>, 443 U.S. at 332 n.5.

Petitioner first argues that two punches in the eye is not the type of force likely to inflict great bodily injury. However, the evidence showed he hit Reilly when Reilly was not looking, that the first punch stunned him and the second punch caused him to fall to the ground where he hit his head on cement. The appellate court correctly noted that the force used constituted force likely to inflict great bodily injury as that term is defined under state law. <u>See</u> <u>Nirran W.</u>, 207 Cal.App.3d at 1161-63 (holding that a single blow to the side of the victim's face as the victim and defendant were about to shake hands was likely to inflict great bodily injury where it was delivered with great force and without warning, knocking the victim down and requiring four of five hours of treatment at the hospital); <u>Jackson</u>, 443 U.S. at 324 n.16 (holding that federal habeas courts must analyze <u>Jackson</u> claims "with explicit reference to the substantive elements of the criminal offense as defined by state law.") This Court must accept the appellate court's construction of state law. <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), citing <u>Estelle v.</u> <u>McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); <u>see also</u> <u>Aponte v. Gomez</u>, 993 F.2d 705, 707 (9th Cir. 1993) (Federal habeas courts "are bound by a state court's construction of its own penal statutes.")

Although the defense presented a witness who said Reilly threw the first punch, the Court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming the jury resolved all conflicts in a manner that supports the verdict. <u>Jackson</u>, 443 U.S. at 319.

Even if Petitioner is correct that a reasonable inference could be drawn from the evidence that he did not use force likely to inflict great bodily injury, that does not satisfy his burden of showing it was unreasonable for the state court to find that the jury could have drawn a reasonable inference that he used such force. See Cavazos v. Smith, 565 U.S. 1, 7 (2011) (holding that Jackson "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"), quoting Jackson, 443 U.S. at 326; Coleman v. Johnson, 566 U.S. 650, 656 (2012) ("The jury in this case was convinced, and the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality.")  Given the doubly deferential review, it is clear that the state court adjudication of this first aspect of claim one is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.

In the second aspect of claim one, Petitioner contends insufficient evidence was introduced to allow the jury to draw a reasonable inference he inflicted great bodily injury on the victim as charged in count one and within the meaning of the California Penal Code § 12022.7(f) enhancement on that count.  (ECF No. 12 at 5.)  The appellate court noted that under state law great bodily injury is defined as "significant or substantial physical injury."  (Lodgment No. 5, People v. Boelkes, No. D067993, slip op. at 6.)  The jury was instructed on the definition of great bodily injury required to satisfy count one and it's § 12022.7(f) enhancement: "Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm."  (RT 361.)  Evidence from which the jury could draw a reasonable inference Petitioner inflicted such injury included the photographs taken at the hospital depicting Reilly's injuries as well as the testimony about his injuries.  Reilly testified that: (1) he hit his head on cement after the second punch and was in and out of consciousness several times thereafter, and continued to slip in and out of consciousness until he was at the hospital examination room where he

stopped blacking out, (2) the cut above his left eye required five stitches, it was painful for two to three weeks, and he could not see from it for about a month and a half because it was swollen shut, (3) he developed a cyst in the eye because the doctors could not remove a contact lens, and he was unable to see properly for another two weeks, and (4) he cut his lip on his tooth, and had to have his lip re-cut at the hospital two weeks later to drain blood and pus, which required him to keep gauze in his mouth for two weeks making it difficult and painful to eat, drink and talk.  (RT 151-60.)  The police officer who interviewed Reilly at the hospital about an hour after he was injured testified that he "was in a bad condition," with his left eye bloody and swollen shut, swollen upper and lower lips, blood in his mouth, and was in pain and had a hard time talking.  (RT 252.)  The police officer who interviewed him a week after the incident testified that he "looked beat up, like he had been in a fight," with a swollen left eye, swollen lips, and stitches around his left eye, and that he reported trouble seeing out of his left eye and that he could not do his job.  (RT 278-79.)

Thus, Petitioner's contention that Reilly merely suffered a black eye and swollen lip is not supported by the record.  Rather, sufficient evidence was presented for the jury to draw a reasonable inference that Petitioner inflicted "significant or substantial physical injury" within the meaning of count one and its Penal Code § 12022.7(f) enhancement.  See Woods, 241 Cal.App.4th at 486 ("The determination whether a particular victim has suffered physical harm that amounts to 'great bodily injury' is typically a question of fact to be resolved by the jury."), citing People v. Cross, 45 Cal.4th 58, 66 (2008) ("Proof that a victim's bodily injury is 'great' - that is, significant or substantial within the meaning of section 12022.7 - is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury."); People v. Wade, 204 Cal.App.4th 1142, 1148-50 (2012) (holding that "serious bodily injury" is "essentially equivalent" to "great bodily injury," which is satisfied where "an injury caused a serious impairment of physical condition. . . . [which] may include, but is not limited to, loss of consciousness."))  Although Petitioner contends the evidence was equivocal regarding whether Reilly actually ever lost consciousness, Reilly testified that

17cv1905-DMS (BGS)

he "came to" when he was told he was being taken to the hospital, said "I kind of went out again and came to getting . . . helped out of the car" at the hospital, and said that it was only when he was inside the hospital that: "I didn't black out after that anymore." (RT 150.) The Court must presume "the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Cavazos, 565 U.S. at 7; Coleman, 566 U.S. at 656 ("The jury in this case was convinced, and the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality.") The evidence is clearly sufficient to allow a reasonable jury to find Petitioner inflicted great bodily injury on the victim as that term is defined under state law.

Accordingly, in light of the additional layer of deference this Court must give in applying the Jackson standard, as well as the Supreme Court's admonition that federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," Richter, 562 U.S. at 103, quoting Jackson, 443 U.S. at 332 n.5, the Court finds that the state court state court adjudication of claim one does not reflect "an 'unreasonable application of' Jackson and Winship to the facts of this case." Juan H, 408 F.3d at 1274. The Court also finds that the factual findings upon which the state court's adjudication of claim one rest are objectively reasonable. Miller-El, 537 U.S. at 340. The Court recommends habeas relief be denied as to claim one.

## C. Claim Two

Petitioner alleges in claim two that his sentence was enhanced twice for the same act. (ECF No. 12 at 5-6.) He claims the trial judge premised two enhancements, five years for his prior strike conviction and three years for the Penal Code § 12022.7(a) great bodily injury finding on count one, on the fact that the jury found he had inflicted great bodily injury. (Id.) Respondent answers that this claim is not cognizable on federal habeas because it presents only a question of state sentencing law. (ECF No. 15-1 at 21.)

Claim two was presented to the state supreme court in a petition for review. (Lodgment No. 7.) That petition was denied with an order which stated: "The petition for review is denied. [¶] Corrigan, J., was absent and did not participate." (Lodgment No. 8,

17cv1905-DMS (BGS)

<u>People v. Boelkes</u>, No. S236548, order at 1.)  It was presented to the state appellate court on direct appeal and denied in a written opinion.  (Lodgment Nos. 3-5, 9.)

The Court will look through the silent denial by the state supreme court to the last reasoned state court opinion addressing the claim, the appellate court opinion, which states:

> Boelkes claims that the trial court erred, under section 654, in imposing both a great bodily injury sentence enhancement pursuant to section 12022.7, subdivision (a) and a serious felony sentence enhancement pursuant to section 667, subdivision (a)(1) because both enhancements were premised on the same act, namely, his infliction of great bodily injury.  "We review de novo the legal question of whether section 654 applies."  (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)

> Section 654, subdivision (a) provides in relevant part:

>> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

> The California Supreme Court has "held that section 654 *does not apply to . . . those (enhancements) that go to the nature of the offender*."  (*People v. Ahmed* (2011) 53 Cal.4th 156, 162 (italics added), citing *People v. Coronado* (1995) 12 Cal.4th 145, 156–159 (*Coronado*).)  The *Coronado* court reasoned that section 654 does not apply to such enhancements because "they are not attributable to the underlying criminal conduct which gave rise to the defendant's prior and current convictions."  (*Coronado, supra*, 12 Cal.4th at p. 158.)  Accordingly, because imposing an enhancement premised on a defendant's status as a recidivist "does not implicate multiple punishment of an act or omission, section 654 is inapplicable."  (*Ibid.*)

> In *People v. Jones* (2009) 178 Cal.App.4th 853, 865 (*Jones*), the Court of Appeal applied *Coronado* and concluded that section 654 does not apply to the serious felony enhancement contained in section 667, subdivision (a)(1). The *Jones* court reasoned:

>> "(S)ection( ) 667, subdivision (a)(1) . . . qualif(ies) as (a) status enhancement( ) because (it is) based on defendant's status as a repeat offender and not on the conduct that served as the basis for the current offense.  As a result,

section 654 does not apply."  (*Jones, supra*, 178 Cal.App.4th at p. 865.)

Boelkes contends that his "sentence for assault was enhanced twice based on the same act and the same true finding of great bodily injury."  In support of this claim, Boelkes argues that the court's imposition of a five-year serious felony enhancement (§ 667, subd. (a)(1)) was premised on his having inflicted great bodily injury on the victim.  Boelkes is incorrect.  The serious felony enhancement was premised on Boelkes having committed a serious felony after previously having been convicted of a serious felony.  (See § 667, subd. (a)(1) ("any person convicted of a serious felony who previously has been convicted of a serious felony . . . shall receive . . . a five-year enhancement for each such prior conviction on charges brought and tried separately"); § 1192.7, subd. (c)(8) (defining a serious felony as "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice").)  Under *Coronado* and its progeny, section 654 does not bar the imposition of serious felony enhancement pursuant to section 667, subdivision (a), because the enhancement is "not attributable to the underlying criminal conduct which gave rise to the defendant's prior and current convictions."  (*Coronado, supra*, 12 Cal.4th at p. 158; see *Jones, supra*, 178 Cal.App.4th at p. 865.)

In *People v. Kane* (1985) 165 Cal.App.3d 480, 487–488 (*Kane*), the court rejected an argument nearly identical to the one that Boelkes makes here:

> "Defendant further contends the court improperly made a 'dual use of facts' by enhancing his sentence twice for the use of a firearm.  Defendant's argument appears to be that since the firearm use is the sole factor making the present offense a 'serious felony' under section 667, enhancement for the firearm use under section 12022.5 and enhancement for the prior burglary conviction under section 667 constitutes an improper use of a single fact to impose double punishment.  We disagree.

> "This case does not involve double punishment for the single act of using a firearm.  The firearm use was punished once as an enhancement under section 12022.5 and was further used to define the present offense as a 'serious felony' in order to impose an additional punishment for the prior conviction.  It is the status of the present crime as a 'serious felony' which allows the

imposition of additional punishment for the prior conviction. The two types of enhancements serve different purposes and punish different conduct. Use enhancements go to the nature of the offense, increasing the punishment on the basis of certain circumstances accompanying the crime. Prior offense enhancements go to the nature of the offender, punishing him or her for the habitual commission of crimes." (*Id*. at p. 487.)

As in *Kane*, Boelkes is not receiving double punishment for the single act of inflicting great bodily injury. Rather, Boelkes's infliction of great bodily injury "was punished once as an enhancement under (section 12022.7, subdivision (a))" and was further "used to define the present offense as a 'serious felony' in order to impose an additional punishment for the prior conviction." (*Kane, supra*, 165 Cal.App.3d at p. 487.)

Accordingly, we conclude that the trial court did not err in imposing both a great bodily injury enhancement pursuant to section 12022.7, subdivision (a) and a serious felony enhancement pursuant to section 667, subdivision (a)(1).

(Lodgment No. 9, People v. Boelkes, No. D067993, slip op. at 14-17.)

Respondent contends this claim does not present a federal question because it alleges only an error of state sentencing law. However, a federal due process violation can arise from a state law ruling that is arbitrary or capricious. Richmond v. Lewis, 506 U.S. 40, 50 (1992) (holding that a state court's application of state law does not rise to the level of a federal due process violation unless it was so arbitrary or capricious as to constitute an independent due process violation). "The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991) ("While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness.") In addition, the Double Jeopardy Clause of the Fifth Amendment, as applicable to the states through the Fourteenth Amendment,

"protects against multiple punishments for the same offense." <u>Brown v. Ohio</u>, 432 U.S. 161, 165 (1977).

Petitioner was sentenced to the low term of two years on count one, assault by means of force likely to produce great bodily injury, based on a determination by the trial judge that his actions involved a short attack with two punches, no weapons and no permanent injury to the victim. (RT 479-81.) The two-year term was doubled as a result of a prior strike conviction for burglary in 2001, which the trial judge refused to dismiss after finding Petitioner fell within the spirit of California's three strikes law. (<u>Id.</u>) The sentence on count one was enhanced three years based on the jury finding that he personally inflicted great bodily injury on the victim within the meaning of California Penal Code § 12022.7(a), and a consecutive five-year term was added pursuant to California's three strikes law due to the prior burglary strike. (RT 481-82.)

The doubling of the two-year term on count one and the imposition of the five-year enhancement were based on Petitioner's recidivism, and therefore do not implicate the Double Jeopardy Clause. <u>See</u> <u>Witte v. United States</u>, 515 U.S. 389, 400 (1995) ("In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'"), quoting <u>Gyger v. Burke</u>, 334 U.S. 728, 732 (1948). The three-year enhancement on count one was imposed because the jury found he inflicted great bodily injury on the victim, which is distinct from the guilty verdict on count one which was based on their finding that he used force likely to inflict great bodily injury when he assaulted the victim.

Thus, the state court correctly found that Petitioner was not sentenced twice for the same act. Rather, he received two years for assaulting the victim with force likely to inflict great bodily injury, three years for inflicting great bodily injury on the victim, and seven years due to his recidivism, which doubled the two-year term for the assault and added a

five-year enhancement. The state court determination that his sentence was not enhanced twice for the same act is supported by the record and is not arbitrary or capricious. <u>See</u> <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir. 1989) (holding that a federal habeas court must defer to the state court's construction of its own law unless it is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation.")

The Court finds that to the extent the state court adjudicated the federal aspects of claim two (due process and double jeopardy), the adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. To the extent the state court did not adjudicate the federal aspects of claim two because they were not presented in state court, the Court recommends denying habeas relief as to the federal aspects of claim two under de novo review.[2] <u>See Berghuis v. Thompkins</u>, 560 U.S. 370, 390 (2010) (holding that a federal habeas court may deny a claim under de novo review irrespective of whether it was adjudicated in state court "because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.")

### D. Claim Three

Petitioner alleges in claim three that he was prejudiced by the trial court's failure to provide an adequate response to the jury's request for clarification of the meaning of "great

---

[2] Petitioner did not present claim two to the California Supreme Court as a federal claim (<u>see</u> Lodgment No. 7 at 24-27), and it is only presented as a federal claim here under a liberal reading of the Second Amended Petition. <u>See</u> <u>Zichko v. Idaho</u>, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important with regard to which claims are presented). Although Petitioner has failed to exhaust state court remedies as to a federal claim, <u>see</u> <u>Granberry v. Greer</u>, 481 U.S. 129, 133-34 (1987) (holding that a California state prisoner exhausts state judicial remedies by presenting the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition), the Court has authority to deny such a clearly meritless unexhausted claim on the merits. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

bodily injury." (ECF No. 12 at 7.) Petitioner also alleged in his original federal Petition (ECF No. 1 at 6), and in his First Amended Petition (ECF No. 10 at 6), but not in the Second Amended Petition (ECF No. 12 at 7), that he received ineffective assistance of counsel because defense counsel was deficient in failing to seek a more detailed definition of great bodily injury. The failure to include the ineffective assistance of counsel aspect of claim three in the Second Amended Petition would ordinarily constitute a waiver of the claim. See Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012). However, Respondent has answered the Second Amended Petition as if it included the ineffective assistance of counsel aspect of claim three. (ECF No. 15 at 3; ECF No. 15-1 at 21-27.)

Because the Court would grant Petitioner leave to amend the Second Amended Petition to cure this oversight if he requested to do so, and because Respondent has answered the Second Amended Petition as if it raised the ineffective assistance of counsel aspect of claim three and would not be prejudiced by reaching the merits of the claim, the Court will treat the Second Amended Petition as it if had reasserted this aspect of claim three in the same manner it was presented in the first two iterations of the federal petition, without requiring Petitioner to formally amend his Second Amended Petition. See Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973) ("The Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) [of the Federal Rules of Civil Procedure] by freely granting leave to amend when justice so requires. . . . [u]nless undue prejudice to the opposing party will result, . . . [as] [t]he purpose of pleadings is to facilitate a proper decision on the merits, and not to erect formal and burdensome impediments in the litigation process.") (internal citations and quotation marks omitted).

Respondent answers that the aspect of claim three alleging the trial judge gave an inadequate response to the jury's question is procedurally defaulted in this Court due to its forfeiture in state court arising from defense counsel's acquiescence in the trial judge's answer. (ECF No. 15-1 at 21-24.) Respondent argues that the ineffective assistance of counsel aspect of the claim fails because the state court adjudication, on the basis that Petitioner did not rebut the presumption that defense counsel may have had a tactical reason

for not wanting the jury to be given a more detailed response, is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  (Id. at 24-27.)

Petitioner presented claim three to the state supreme court in a petition for review which was summarily denied without a statement of reasoning, and to the appellate court which denied it in a written opinion.  (Lodgment Nos. 3-9.)  The Court will apply the provisions of 28 U.S.C. § 2254(d) to the last reasoned state court opinion addressing the claim, the appellate court opinion on direct review, which states:

> Boelkes claims that the trial court failed to provide an adequate response to a jury question requesting clarification of the meaning of the term "great bodily injury."  Boelkes further contends that defense counsel provided ineffective assistance in acquiescing to the court's proposed response to the jury's question.

> 1. *Factual and procedural background*

> The trial court instructed the jury pursuant to a modified version of CALCRIM No. 3160 concerning the meaning of the term "great bodily injury" as follows:

>> "Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm."

> During deliberations, the jury sent the court a handwritten note that stated in relevant part:

>> "Can we get clarification on the findings?  Specifically:

>> "(¶) . . . (¶)

>> "2.  Better clarification on what GBI means → what constitutes greater vs moderate harm(?)"

> After receiving the note, the trial court held a hearing outside the presence of the jury with the prosecutor and defense counsel during which the following colloquy occurred:

"The Court: . . . (¶) We have received a question or a jury note. . . . Have both of you had an opportunity to read the note?

"(Defense counsel):  Yes, your honor.

"(The prosecutor):  Yes.

"The Court:  The court did draft a proposed response. Have you both had an opportunity to see the drafted proposed response?

"(The prosecutor):  Yes.

"(Defense counsel):  Yes.

"The Court:  Comments from either of you?

"(Defense counsel): I think I am fine with the response.  I think it answers the question.  I think it's fine.

"(The prosecutor):  I believe I am too, your honor.  I just wanted to check something.

"The Court:  All right.

"(The prosecutor):  I am satisfied.  Thank you.

"The Court:  Then what we will do is send the response back to the jurors and wait until we hear back from them."

After this discussion, the court provided the following response to the jury's question:

"As to your request for clarification on what constitutes Great Bodily Injury and greater versus moderate harm, the Court refers you to Instruction 200 (Duties of Judge and Jury), which states, 'Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use.  These words and phrases will be specifically defined in these instructions.  Please be sure to listen carefully and follow the definitions that I

give you. Words and phrases not specifically defined in these instruction(s) are to be applied using their ordinary, everyday meanings.'

"The court cannot further define these phrases or words for you. As always you must consider Instruction 200 in its entirety and consider all the instructions together."

### 2. *Governing law*

#### a. *Forfeiture of a contention that a trial court's response to a jury's question should be modified or clarified*

It is well established that "'(w)hen the trial court responds to a question from a deliberating jury with a generally correct and pertinent statement of the law, a party who believes the court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal.'" (*People v. Boyce* (2014) 59 Cal.4th 672, 699 (*Boyce*), quoting *People v. Dykes* (2009) 46 Cal.4th 731, 802 (citing numerous cases).)

#### b. *Ineffective assistance of counsel*

To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient in that it "fell below an objective standard of reasonableness," evaluated "under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688; accord, *People v. Ledesma* (1987) 43 Cal.3d 171, 216.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Thus, "(w)hen the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ""no conceivable tactical purpose"' for counsel's act or omission.'" (*People v. Centeno* (2014) 60 Cal.4th 659, 675 (*Centeno*).)

### 3. *Application*

Boelkes contends that the trial court's response to the jury's question did not provide "adequate guidance" and that "additional information could have been provided." However, Boelkes does not dispute that the trial court reiterated "'technically correct' definitions." Nor does Boelkes dispute that

defense counsel "acquiesce(d) to the trial court's response." Under these circumstances, Boelkes's claim is forfeited. (See *Boyce*, *supra*, 59 Cal.4th at p. 699.)

With respect to his ineffective assistance of counsel claim, Boelkes cannot meet the high burden of establishing that there was """"no conceivable tactical purpose"""" (*Centeno*, *supra*, 60 Cal.4th at p. 675), for defense counsel's acquiescence to the trial court's proposed response to the jury's question. As discussed above, Boelkes does not dispute that the trial court's response to the jury's question was legally correct. Further, if defense counsel had sought a more "complete explanation" of the meaning of the term "great bodily injury," counsel risked having the court elaborate on the meaning of the term in a manner that was unfavorable to Boelkes.

Accordingly, we conclude that Boelkes forfeited his claim that the trial court failed to provide an adequate response to a jury question requesting clarification of the meaning of the term "great bodily injury" and he has not established that defense counsel provided ineffective assistance in acquiescing to the court's proposed response.

(Lodgment No. 9, <u>People v. Boelkes</u>, No. D067993, slip op. at 10-14.)

## 1. Failure to Properly Instruct the Jury

### a. procedural default

Respondent contends the failure to properly instruct the jury aspect of claim three is procedurally defaulted because it was forfeited in state court under the contemporaneous objection rule due to defense counsel's acquiescence in the trial judge's answer. (ECF No. 15-1 at 24.) Petitioner argued in state court that California Penal Code § 1138 required the trial judge to adequately respond to the jury inquiry, and any forfeiture should be excused because defense counsel had a duty to point out the inadequacy of the answer and request further instruction.[3] (Lodgment No. 3 at 30-35; Lodgment No. 5 at 22-23.)

---

[3] California Penal Code § 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

When a state court rejects a federal claim for a violation of a state procedural rule which is adequate to support the judgment and independent of federal law, a claim is procedurally defaulted in federal court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30 (1991). A state procedural rule is "independent" if it is not interwoven with federal law. <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001). A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established" at the time of the default. <u>Calderon v. United States District Court</u>, 96 F.3d 1126, 1129 (9th Cir. 1996). The Court may reach the merits of a procedurally defaulted claim if the petitioner shows cause for the default and prejudice as a result, or shows that the failure to review the claim would result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750.

Respondent has the initial burden of pleading the existence of an independent and adequate state procedural ground. <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2003). The appellate court found this aspect of claim three forfeited because Petitioner did not dispute that the trial court gave a correct definition or that his counsel acquiesced to that response, citing <u>Boyce</u>, 59 Cal.4th at 699 ("When the trial court responds to a question from a deliberating jury with a generally correct and pertinent statement of the law, a party who believes the court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal.")

Respondent has satisfied the initial burden, and the burden has shifted to Petitioner to show the procedural bar is not adequate and independent. <u>Bennett</u>, 322 F.3d at 586. Petitioner has made no such showing, nor has he attempted to do so, and the Court finds this aspect of claim three procedurally defaulted.

Petitioner may overcome the default by showing it was due to ineffective assistance of counsel. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) ("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State."); <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000) ("Although we have not identified with precision exactly what

constitutes 'cause' to excuse a procedural default, we have acknowledged that in certain circumstances *counsel's ineffectiveness in failing properly to preserve the claim for review in state court* will suffice. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution.") (citation omitted) (emphasis added). As set forth below, Petitioner has not shown he received constitutionally ineffective assistance of counsel. Accordingly, he has not established a basis for excusing the default, and the Court recommends denying habeas relief as to the failure to properly instruct the jury aspect of claim three on the basis it is procedurally defaulted.

### b. merits

Even assuming Petitioner could overcome the procedural default of the failure to properly instruct the jury aspect of claim three, the Court recommends denying habeas relief on the merits of the claim. To merit habeas relief on an instructional error, Petitioner must show the error "so infected the entire trial that the resulting conviction violates due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1977), quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973). Even if the trial court's instructional error violated due process, habeas relief would not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); California v. Roy, 519 U.S. 2, 5 (1996).

Petitioner argues that the jury might not have found that he inflicted great bodily injury or used force of the type likely to inflict great bodily injury if they had been instructed differently on the meaning of great bodily injury. He argues that although the jury asked for clarification of the meaning of "moderate" and "minor" injury, they were only told that "great bodily injury" was more than either of those. He argued in state court that the jury could have been instructed that great bodily injury is the equivalent of serious bodily injury. (Lodgment No. 3 at 37, citing People v. Wade, 204 Cal.App.4th 1142, 1150 (2012) (holding that "serious bodily injury" is "essentially equivalent" to "great bodily injury.")))

The trial judge answered the jury's question by referring them to their instructions. The jury was instructed with CALCRIM No. 3160, which provides a "full and complete" definition of great bodily injury. People v. Beardslee, 53 Cal.3d 68, 97 (1991). That instruction, as given here, stated in relevant part: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (RT 361.) With respect to count two, battery causing serious bodily injury, the jury was instructed that: "A serious bodily injury means a serious impairment of physical condition. Such an injury may include, but is not limited to, loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily members or organ, a wound requiring extensive suturing, and serious disfigurement." (RT 364.)

Petitioner argues the victim did not suffer serious bodily injury under either definition because his five stitches were not extensive and the evidence was equivocal regarding his loss of consciousness. However, the jury found Petitioner had caused serious bodily injury to the victim when they found him guilty on count two, battery with serious bodily injury. Petitioner has not shown how instructing them that great bodily is equivalent to serious bodily injury would have assisted his defense. Although defense counsel could have requested definitions from caselaw, the state appellate court indicted those definitions included "significant or substantial injury" which could be applied by the use of hands alone and included loss of consciousness, which did not require a showing of "[p]ermanent or protracted impairment, disfigurement, or loss of function." (Lodgment No. 9, People v. Boelkes, No. D067993, slip op. at 5.) Thus, although Petitioner argues that the jury was asking for assistance on where to draw the line between minor, moderate, serious and great bodily injury, he has not shown they were incorrectly instructed, and has not identified any further instruction which would have benefitted his defense. Accordingly, he has not identified an instructional error at all, much less one which "so infected the entire trial that the resulting conviction violates due process." Kibbe, 431 U.S. at 154.

Furthermore, the alleged instruction error was clearly harmless. Had the jury been given a more detailed instruction on the meaning on great bodily injury it would have

necessarily included the legal elements discussed above, including its equivalence to serious bodily injury which the jury found had been met as to count two. As discussed in claim one, sufficient evidence was presented at trial to support a finding a great bodily injury, specifically, the victim's loss of consciousness, the five stitches needed to close the cut above his left eye, the lengthy painful recovery process, the months-long loss of the use of his left eye, and the cyst that developed and had to be drained. The jury was instructed that minor or moderate injuries were to be given their "ordinary, everyday meanings," and were instructed that: "A serious bodily injury means a serious impairment of physical condition. Such an injury may include, but is not limited to, loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily members or organ, a wound requiring extensive suturing, and serious disfigurement." (RT 364.) The fact that the jury found the victim's injuries satisfied the definition of "serious bodily injury" precludes a finding that failing to further instruct them that great bodily injury is the equivalent of serious injury, or that failing to further instruct them on the ordinary, everyday meaning of minor or moderate injury, could have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

In sum, the Court finds that the instructional error aspect of claim three is procedurally defaulted. To the extent Petitioner could overcome the default, the Court finds the alleged instructional error did not rise to the level of a federal constitutional violation, and even if it did, any error is harmless.

### 2. Ineffective Assistance of Counsel

Finally, Petitioner contends he received ineffective assistance of counsel due to the failure of defense counsel to object to the answer given by the trial judge to the jury question, and to suggest an alternate answer providing guidance on the meaning of great bodily injury, arguing "there is simply no reasonable tactical basis for acquiescing to the court's failure to provide further guidance in defining this term." (ECF No. 10 at 6.) Respondent answers that it was objectively reasonable for the state appellate court to reject this claim on the basis that a more elaborate definition of great bodily injury may have been

unfavorable to the defense, and therefore counsel may have had a tactical reason for acquiescing in the answer proposed by the trial judge. (ECF No. 15-1 at 24-27.)

As quoted above, the last reasoned decision of the state court with respect to this aspect of claim three stated:

> With respect to his ineffective assistance of counsel claim, Boelkes cannot meet the high burden of establishing that there was """"no conceivable tactical purpose"""" (*Centeno*, *supra*, 60 Cal.4th at p. 675), for defense counsel's acquiescence to the trial court's proposed response to the jury's question. As discussed above, Boelkes does not dispute that the trial court's response to the jury's question was legally correct. Further, if defense counsel had sought a more "complete explanation" of the meaning of the term "great bodily injury," counsel risked having the court elaborate on the meaning of the term in a manner that was unfavorable to Boelkes.

(Lodgment No. 9, People v. Boelkes, No. D067993, slip op. at 13-14.)

To establish constitutionally ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). He must also show counsel's deficient performance prejudiced his defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. For prejudice, there need only be a reasonable probability that the result of the proceeding would have been different absent the error. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Both deficient performance and prejudice must be established to show constitutionally ineffective assistance of counsel. Id. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). In addition, 28 U.S.C. § 2254(d) presents "a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011), quoting Richter, 562 U.S. at 102 and Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted).

The state appellate court determination that Petitioner must overcome a strong presumption that it was a strategic choice by defense counsel to forgo asking for a more detailed explanation of the term "great bodily injury" is consistent with clearly established federal law. See Strickland, 466 U.S. at 687 (holding that the burden to "show that counsel's performance was deficient" rests squarely on the defendant); Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (recognizing a strong presumption that counsel took actions "for tactical reasons rather than through sheer neglect"), citing Strickland, 466 U.S. at 690 (holding that counsel is "strongly presumed" to make decisions in the exercise of professional judgment). Petitioner's argument that there was no reasonable tactical basis for failing to request a more complete definition of great bodily injury is belied by the record. The jury was fully and completely instructed on the definition of great bodily injury, and additional instructions would have called to their attention factors which had support in the trial testimony, such as loss of consciousness, the fact that the use of hands alone can inflict such injury, and that permanent impairment is not necessary. Thus, a more detailed definition of great bodily injury, or the explanation that it is equivalent to serious bodily injury, could have been detrimental to the defense. The decision by defense counsel to acquiesce in the answer proposed by the trial judge was clearly within the "wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.") The state court finding that Petitioner did not overcome the presumption that counsel made a tactical decision to acquiesce in the answer drafted by the trial judge is objectively reasonable.

Even assuming Petitioner could show it was objectively unreasonable for the state court to find defense counsel's performance was not deficient, he must still establish

prejudice to be entitled to federal habeas relief. See Id. at 687 (holding that both deficient performance and prejudice are required to establish constitutionally ineffective assistance of counsel); Fry, 551 U.S. at 119-22 (holding that section 2254(d) is a threshold requirement, and even if it is satisfied, or does not apply, a petitioner must still show a federal constitutional violation occurred to obtain federal habeas relief). Because the state court did not address the prejudice prong, to the extent this Court needs to address it a de novo review of the prong is required. Porter v. McCollum, 558 U.S. 30, 39 (2009).

To establish prejudice, Petitioner must show "a probability sufficient to undermine confidence in the outcome" as a result of defense counsel's failure to request a different answer to the jury's question. Strickland, 466 U.S. at 687. As discussed above, the only alternative to the trial judge's answer Petitioner has suggested was to instruct the jury that great bodily injury and serious bodily injury are essentially equivalent. But because the jury found he had inflicted serious bodily injury in finding him guilty on count two, there is no reasonable probability they would have made different findings on count one and its enhancement had they been so instructed. Because the jury was fully and completely instructed on the meaning of great bodily injury, and any further instruction would have merely highlighted aspects of the definition of great bodily injury which were supported by the trial testimony, such as the victim's loss of consciousness, Petitioner has not shown he was prejudiced by his counsel's acquiescence in the answer to the jury's question.

The Court recommends denying habeas relief as to the ineffective assistance of counsel aspect of claim three on the basis that the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. Even to the extent Petitioner could satisfy that threshold requirement, the Court finds the claim fails for lack of prejudice under a de novo review.

**E. Appointment of Counsel**

Petitioner filed a motion to appoint counsel which the Court denied without prejudice. (ECF Nos. 18, 20.) The Court has now determined that Petitioner's allegations,

17cv1905-DMS (BGS)

liberally construed, do not warrant relief even if true. Where, as here, "the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel." Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994); see also LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (finding appointment of counsel unnecessary where petitioner's "district court pleadings illustrate to us that he had a good understanding of the issues and the ability to present forcefully and coherently his contentions.") The Court finds that the interests of justice do not warrant the appointment of counsel in this case.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing Judgment be entered denying the Second Amended Petition for a Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **May 27, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 10, 2019.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  April 25, 2019

Hon. Bernard G. Skomal
United States Magistrate Judge

17cv1905-DMS (BGS)